**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

**DAVID ERWIN**                              **CIVIL ACTION NO.  23-1005**

**VERSUS**

                                             **SECTION:**

**DEPUTY DON MURRAY,**
**INDIVIDUALLY, AND**
**SHERIFF GREGORY CHAMPAGNE**          **MAGISTRATE:**

## COMPLAINT

  **NOW INTO COURT,** through undersigned counsel, comes the petitioner, **DAVID ERWIN**, a person of the full age of majority and a resident of St. Charles Parish, Louisiana, who respectfully represents:

**I. PRELIMINARY STATEMENT**

  1. This civil complaint is brought pursuant to Title 42 U.S.C. Section 1983 as an action at law to redress the deprivation under color of a statute, ordinance, regulation, custom or usage of a right, privilege, or immunity secured to petitioner by the Fourth and Fourteenth Amendments to the Constitution of the United States which protects against unreasonable search and seizure and provides for equal rights of citizens or of all persons within the jurisdiction of the United States and arising under the laws and statutes of Louisiana.

**-1-**

II.    **JURISDICTION**

2.      Jurisdiction is vested in this Court by 28 U.S.C. Sections 1331 and 1334.

3.      Supplemental jurisdiction is asserted for all claims cognizable under the laws of the State of Louisiana.

III.    **PARTIES**                        **(PLAINTIFF)**

4.      **DAVID ERWIN** (hereinafter "**ERWIN**") is an adult citizen of the State of Louisiana and is domiciled in the Eastern District of Louisiana.

**(DEFENDANTS)**

5.      **GREGORY CHAMPAGNE** (hereinafter "**SHERIFF CHAMPAGNE**") in his official capacity as Sheriff of St. Charles Parish, an adult citizen of the State of Louisiana and domiciled in the Eastern District of Louisiana is named a defendant herein.

6.      **DEPUTY DON MURRAY** (hereinafter "**MURRAY**") individually, as a St. Charles Parish Sheriff's deputy, an adult citizen of the State of Louisiana and domiciled in the Eastern District of Louisiana is named a defendant herein.

IV.    **FACTUAL ALLEGATIONS**

7.      On April 13, 2022, shortly after midnight, the petitioner, **ERWIN**, a 65 year old male, while asleep in his bed with his wife, experienced seizures, followed by a postictal state of confusion and impaired awareness. In response to this medical emergency, at approximately 12:14 a.m., his wife, Darlene Erwin, called 911.

8.      Shortly thereafter, at approximately 12:20 a.m., first responders, including the defendant, **MURRAY**, and other deputies, EMS and the fire department arrived at the **ERWIN** home at 329 Longview Drive, Destrehan, Louisiana. The EMTs initiated treatment of **ERWIN** who

was initially lethargic and non-responsive. This was observed by the defendant, **MURRAY**, as well as several other police officers.

9.      The defendant, Deputy **MURRAY**, remained in the bedroom with **ERWIN**, as two EMTs and **ERWIN**'s wife discussed **ERWIN's** medical history. Also present in the bedroom during this discussion were at least two firemen, **ERWIN's** male cousin, and two other deputies.

10.     Because the reason for **ERWIN's** condition was a mystery, EMT Nicole Fountain administered **ERWIN** Narcan, even though **ERWIN** had taken no opioids. In response to the Narcan **ERWIN** became less lethargic. As **ERWIN** became more alert, it was apparent to everyone, including **MURRAY**, that **ERWIN** was confused, afraid and disoriented. **ERWIN** babbled, mistook his closet for the bathroom, fidgeted and rolled around on his bed. It was clear he did not understand what was occurring. **ERWIN's** wife advised the two EMT's, while **MURRAY** and others were present, that **ERWIN** had been shaking in his sleep prior to their arrival. She also advised them he had a pacemaker, a heart murmur and high blood pressure.

11.     After waiting approximately 20 minutes for **ERWIN's** confusion to subside to no avail, the male EMT, Delroy Restor, and **ERWIN's** male cousin, and a fireman, attempted to place **ERWIN** on a gurney for transport to the emergency room. **MURRAY** was present in **ERWIN's** room for virtually the entire time, so he knew **ERWIN's** mental status was altered and **ERWIN** was incapable of understanding what was occurring. While the others attempted to obtain **ERWIN's** cooperation in voluntarily laying on the gurney, the female EMT positioned herself behind **ERWIN**, and without any warning, injected him in his leg with 300 mgs of Ketamine. **MURRAY** saw her do this as he was standing behind her. **ERWIN**, unaware of what was occurring, felt a stick in his leg. He reached behind his body and instinctively grabbed the object from the EMT's hand. Confused

as to what stuck him **ERWIN** asked "What's that?"

12.     Approximately twelve (12) seconds after being stuck with the needle, **ERWIN**, who is 5'10" tall and 250 lbs, jumped off the gurney screaming. During those 12 seconds **ERWIN** can be heard praying for Jesus and asking for help. **ERWIN** then ran through his house to his front door, oblivious of the fact that he still had a syringe in his hand.

13.     As he ran out of his house **ERWIN** ran past his son and several concerned relatives, one or two police officers and several firemen.

14.     Although **ERWIN** was scared, confused and disoriented, he did threaten, assault, strike or batter anyone as he fled out his house in his t-shirt and boxer underwear.

15.     Approximately nine (9) seconds after jumping off the stretcher, **ERWIN** can be seen on **MURRAY's** body cam video outside the front door of his house on his walkway. Seconds later, the defendant, **MURRAY**, yells, "Sir, get on the ground". In response to **MURRAY's** command, **ERWIN** turned around to look at **MURRAY**, who responded by pointing his taser gun at **ERWIN**. **ERWIN** slowly backed away from **MURRAY** onto the grass in his front yard. As **ERWIN** backed away **MURRAY** quickly screamed, "Get on the ground" three (3) more times.

16.     **MURRAY's** body cam video reflects that **ERWIN** was confused, disoriented and afraid. **MURRAY** knew this. Nonetheless, **MURRAY**, quickly yelled "Taser, Taser, Taser," then shot **ERWIN** with his taser shocking him for five (5) seconds. Immediately prior to being tased **ERWIN** cried, "Oh, please don't". Under the circumstances, **MURRAY** failed to give **ERWIN** sufficient time to comprehend the situation and respond. At no time prior to being tased, was **ERWIN** under arrest, resisting arrest, or verbally or physically threatening **MURRAY** or anyone with the syringe. He was not suspected of a crime, and therefore no reasonable suspicion existed to

detain him. At no time prior to being tased did **MURRAY** or any other officer command **ERWIN** to drop the syringe. The audio on **MURRAY's** body cam does not record **MURRAY** or anyone ordering **ERWIN** to drop the syringe prior to tasing him.

17.    **MURRAY's** first tasing of **ERWIN**, occurred approximately 23 seconds after **ERWIN** got off the gurney, and only eleven (11) seconds after **MURRAY** first yelled, "Sir, get on the ground".

18.    Upon information and belief, at no time prior to **MURRAY** tasing **ERWIN**, did anyone ever instruct or order **ERWIN** to drop the syringe.

19.    When **MURRAY** first tased **ERWIN**, **ERWIN** was surrounded by at least three other deputies, several fireman and one or two relatives.

20.    **ERWIN** did not pose an immediate threat to **MURRAY** or anyone else. The only object in his possession was a syringe, which **ERWIN** was not displaying in a threatening manner.

21.    **MURRAY** had been in **ERWIN's** presence for at least twenty minutes prior to **ERWIN** grabbing the syringe and running from the gurney. There was no reason for **MURRAY** to believe that **ERWIN** presented a threat when he was first tased.

22.    **MURRAY's** unprovoked first tasing of **ERWIN**, given **MURRAY's** knowledge at the time, and the absence of any immediate threat, was unreasonable for a police officer. **ERWIN** was not a threat to anyone when first tased. He was experiencing a medical crisis, known by **MURRAY**, and not violating any laws. **MURRAY** failed to take steps to de-escalate the situation or negotiate with **ERWIN**, even though **MURRAY** was aware of **ERWIN's** altered mental state.

23.    As a result of his first tasing, **ERWIN's** body became rigid. He fell backwards, striking the ground with his head and back, resulting serious bodily injury.

24.    **MURRAY's** first tasing of **ERWIN** exacerbated **ERWIN**'s medical emergency and postictal state.

25.    **MURRAY** then exacerbated the situation and caused further injury by tasing **ERWIN** a second time immediately after the first tasing. **MURRAY's** body cam video reflects **ERWIN** was floundering on the ground prior to being tased the second time.

26.    **MURRAY** aggressively tased **ERWIN** the second time before **ERWIN** could react to **MURRAY's** commands.

27.    Defendant, **MURRAY's**, tasing of **ERWIN** the first time, was an illegal seizure and excessive force in violation of the Fourth Amendment to the U.S. Constitution, enforceable pursuant to 42 U.S.C. § 1983, and false arrest and assault and battery under state law.

28.    Defendant, **MURRAY's**, tasing of **ERWIN** the second time, was excessive force in violation of the Fourth Amendment to the U.S. Constitution, enforceable pursuant to 42 U.S.C. § 1983, and an assault and battery under state law.

29.    As a result of **MURRAY's** first illegal seizure and use of excessive force, and his false arrest and first assault and battery on **ERWIN**, the petitioner sustained a subdural hematoma, and back injuries, as well as injuries to other parts of his body.

30.    As a result of **MURRAY's** second use of excessive force, and his second assault and battery on **ERWIN**, the petitioner sustained back injuries and other bodily injuries.

31.    In addition to the physical injuries already described, as a result of **MURRAY's** first illegal seizure and use of excessive force, and false arrest and assault and battery; and second use of excessive force, and assault and battery; **ERWIN** sustained physical and emotional pain and suffering, mental anguish, embarrassment, humiliation, permanent physical injuries to his head, brain

and back and body, medical expenses, lost wages, lost earnings capacity, loss of enjoyment of life and violations of his Fourth Amendment right to be free from unreasonable seizure.

32.     The injuries sustained by **ERWIN**, were solely and proximately caused by the intentional acts of the defendant, **MURRAY**, as previously described.

33.     In the alternative, the injuries sustained by **ERWIN**, were solely and proximately cause by the following negligence of the defendant, **MURRAY**:

> a.     Utilizing a taser gun in both the first and second instance, to shock, stun and disable **ERWIN**, under circumstances not requiring that degree of force.
>
> b.     Improperly using his taser gun in both the first and second instance, under circumstances where it was not necessary to overcome resistance during an arrest, or to prevent an escape, or in self-defense, or in defense of another person from physical harm.

34.     At all times mentioned herein, the defendant, **MURRAY**, was employed by the defendant, **SHERIFF CHAMPAGNE**, and was acting in the course and scope of his employment as a deputy for **SHERIFF CHAMPAGNE**.

35.     The defendant, **SHERIFF CHAMPAGNE**, is vicariously liable for **MURRAY's** supplemental state law claims of false arrest, assault and battery, and/or negligence.

36.     The defendant, **SHERIFF CHAMPAGNE**, is not liable to the petitioner, **ERWIN**, for any Fourth Amendment allegations of excessive force, attributable to the defendant, **MURRAY**.

37.     The defendant, **SHERIFF CHAMPAGNE**, is also independently liable to the petitioner, **ERWIN**, for hiring and/or retaining the defendant, **MURRAY**, as a deputy. Upon information and belief, **MURRAY**, has in the past, utilized unnecessary force, and/or assaulted and battered civilians, without cause or justification. These previous acts include, but are not limited to,

previous instances of improperly tasing civilians. These facts were known, or should have been known, by the defendant, **SHERIFF CHAMPAGNE**, who intentionally, and/or negligently, ignored **MURRAY's** prior behavior, and failed to train, retrain, discipline or terminate **MURRAY**. Under the circumstances, it was foreseeable to the defendant, **SHERIFF CHAMPAGNE**, that the defendant, **MURRAY**, would repeat this behavior, and cause injury.

38.    The defendant, **SHERIFF CHAMPAGNE**, is also independently liable to the petitioner, for his failure to properly train the defendant, **MURRAY**, in how to deal with individuals, experiencing altered mental status, as a result of a medical crisis, who are not violent, not resisting arrest, not escaping, and not physically or verbally threatening anyone.

39.    The defendant, **SHERIFF CHAMPAGNE**, is also independently liable to the petitioner, for his failure to train the defendant, **MURRAY**, on when and how to use his taser gun.

40.    The injuries and damages the petitioner sustained in this case, occurred as a result of the combined intentional and/or negligent acts of the defendants, **MURRAY** and **SHERIFF CHAMPAGNE**, as outlined in paragraphs 7 through 39.

41.    The defendants are liable, jointly, severally and in solido.

## V.    CAUSES OF ACTION

42.    The petitioner was the victim of summary punishment at the hands of the defendant **MURRAY**. **MURRAY's** illegal seizure and use of excessive force against **ERWIN**, when he tased him twice, was a violation of **ERWIN**'s Fourth Amendment right to be free from unreasonable seizure, enforceable pursuant to 42 U.S.C. § 1983.

43.    In addition, the petitioner was the victim of a false arrest and two assaults and batteries, and/or negligence, by the defendant, **MURRAY**, under state law.

44. The defendant, **SHERIFF CHAMPAGNE**, is independently liable to the petitioner, under state law, for his negligence in hiring, retaining, training, disciplining and failing to terminate **MURRAY**, as outlined in paragraphs 37-39.

45. The defendant, **SHERIFF CHAMPAGNE**, is vicariously liable and responsible for the damages occasioned by **MURRAY's** two assaults and batteries, and false arrest of **ERWIN**, and/or **MURRAY's** negligence, under state law, as outlined in paragraph 33.

## VI. DAMAGES

46. As a result of the aforedescribed two instances of excessive force, and/or two instances of assault and battery, false arrest, and/or negligence of the defendant, **MURRAY**, and negligence of the defendant, **SHERIFF CHAMPAGNE**; **ERWIN** suffered physical and emotional pain and suffering, mental anguish, embarrassment, humiliation, permanent physical injuries to his head, back and body, medical expenses, lost wages, lost earnings capacity, loss of enjoyment of life and violations of his Fourth Amendment right to be free of unreasonable seizure.

47. The petitioner is entitled to damages for the above described injuries.

48. The petitioner seeks punitive damages for violations of his civil rights attributable to defendant, **MURRAY**.

49. The petitioner is entitled to reasonable attorney's fees should he prevail in his claims against defendant **MURRAY** for violations of his civil rights.

50. Defendants are liable to the petitioner jointly, severally and insolido.

## VII. PRAYER FOR RELIEF

**WHEREFORE**, the petitioner, **DAVID ERWIN**, prays that the defendants be duly cited and served with a copy of the foregoing Complaint, and be made to answer the same, that the Court

exercises its supplemental jurisdiction over the state claims, and after due proceedings, there be judgment in his favor and against the defendants, **DEPUTY DON MURRAY, individually, and SHERIFF GREGORY CHAMPAGNE, his official capacity**, holding them liable jointly, severally and in solido for all special and compensatory damages alleged herein, together with judicial interest, and that the defendants bear all costs of these proceedings, and for any and all further legal, equitable and general relief available.

The petitioner, **DAVID ERWIN**, further prays that the defendant, **DEPUTY DON MURRAY**, be held liable for any punitive damages awarded and attorney's fees should the petitioner prevail in his claims alleged pursuant to 42 U.S.C. § 1983.

Respectfully submitted;

/s/ **Gary W. Bizal**
**GARY W. BIZAL** (#1255)
GARY W. BIZAL, L.L.C.
4907 Magazine Street
New Orleans, Louisiana  70115
Telephone:  (504)525-1328 * Fax:  (504)525-1353
Email:  gary@garybizal.com

/s/ **Richard T. Gallagher, Jr.**
**RICHARD T. GALLAGHER, JR.** (#22380)
GALLAGHER & WESTHOLZ, LLC
111 Veterans Blvd., Suite 1400
Metairie, Louisiana 70005
Telephone: (504)887-2220 * Fax: (504)754-7542
Email: Ricky@GWPLawFirm.com

*Attorneys for Petitioner, David Erwin*

**WAIVERS OF THE SERVICE OF SUMMONS WILL BE ISSUED TO:**

**SHERIFF GREGORY CHAMPAGNE**
St. Charles Parish Sheriff's Office
15045 River Road
Hahnville, LA 70057

**DEPUTY DON MURRAY**
St. Charles Parish Sheriff's Office
15045 River Road
Hahnville, LA 70057