UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| DAVID ERWIN | CIVIL ACTION |
| VERSUS | NO. 23-1005 |
| DON MURRAY, ET AL. | SECTION "R" (5) |

**ORDER AND REASONS**

Before the Court is defendants' motion to stay discovery.[1] Plaintiff opposes the motion.[2] For the following reasons, the Court grants in part and denies in part the motion.

I. **BACKGROUND**

Plaintiff David Erwin filed this action pursuant to 42 U.S.C. § 1983 against Don Murray, in his individual capacity, and Gregory Champagne, in his official capacity as Sheriff of St. Charles Parish.[3] As to Murray, a St. Charles Parish Sheriff's Deputy, plaintiff alleges violations of his Fourth Amendment right to be free from unreasonable seizure as well as state law claims for false arrest, assault, battery, and negligence.[4] Plaintiff asserts only

---

[1]   R. Doc. 16.
[2]   R. Doc. 17.
[3]   R. Doc. 3.
[4]   *Id.*

state law claims against Champagne for vicarious liability and negligence in hiring, training, disciplining, and failing to terminate Murray.[5]

### A.     Plaintiff's Allegations

Plaintiff's first amended complaint alleges the following facts.[6]

Plaintiff and his wife were asleep at their home on the night of April 13, 2022, when he began to experience seizures followed by a postictal state of confusion and impaired awareness.[7] His wife called 911 at about 12:14 a.m., and first responders, including Murray, arrived at plaintiff's home shortly thereafter.[8] Murray and other first responders entered plaintiff's bedroom, at which time emergency medical technicians ("EMTs") initiated treatment on plaintiff.[9] Murray and at least two other deputies observed plaintiff's initial state of lethargy and unresponsiveness.[10] Murray allegedly was also present while plaintiff's wife advised EMTs of his medical history, including that he has a pacemaker, a heart murmur, and high blood pressure.[11]

---

[5]     *Id.*
[6]     *Id.*
[7]     *Id.* ¶ 7.
[8]     *Id.* ¶¶ 7-8.
[9]     *Id.* ¶¶ 8-9.
[10]    *Id.*
[11]    *Id.* ¶ 10.

2

Although plaintiff contends that he had taken no opioids, EMTs initially administered Narcan, after which plaintiff became more alert but remained confused, afraid, and disoriented.[12] Plaintiff began babbling, fidgeting, and rolling around on his bed for about twenty minutes before first responders attempted to place him on a gurney for transport to the emergency room.[13] Without warning, an EMT injected plaintiff with Ketamine, triggering plaintiff to reach behind his body and grab the syringe from the EMT's hand.[14] Twelve seconds later, plaintiff jumped off the gurney and ran through the house before exiting out of the front door in his t-shirt and boxer underwear, all while still holding the syringe.[15] Plaintiff contends that he was confused and disoriented, but did not threaten, assault, or otherwise injure anyone as he fled.[16]

Murray followed plaintiff outside and ordered him to "get on the ground."[17] According to plaintiff, Murray's body camera footage shows a disoriented plaintiff turn to face Murray before slowly stepping backwards onto the grass in his front yard.[18] Murray, now with his taser pointed at

---

[12]  *Id.*
[13]  *Id.* ¶¶ 10-11.
[14]  *Id.* ¶ 11.
[15]  *Id.* ¶ 12-14.
[16]  *Id.* ¶ 14.
[17]  *Id.* ¶ 15.
[18]  *Id.*

3

plaintiff, quickly ordered plaintiff to get on the ground three more times, after which he shouted "Taser, Taser, Taser" and discharged his taser, shocking plaintiff for five seconds.[19] Just before the first tasing, plaintiff allegedly said, "Oh, please don't."[20] Plaintiff alleges that the first tasing occurred twenty-three seconds after plaintiff jumped off the gurney and eleven seconds after Murray first ordered plaintiff to get on the ground.[21] Plaintiff contends that this was an insufficient amount of time for him to comprehend the situation and to appropriately respond before the tasing.[22]

At the time of the first tasing, plaintiff was surrounded by at least three other deputies, several firemen, and one or two relatives.[23] Plaintiff asserts that at no time before being tased was he physically or verbally threatening anyone with the syringe, and neither Murray nor the other deputies ordered him to drop the syringe.[24] Plaintiff further contends that Murray, who observed plaintiff for at least twenty minutes before plaintiff grabbed the syringe and exited his home, should have known that plaintiff's mental state was altered and that he was not a threat to anyone present.[25]

---

[19]   *Id.* ¶¶ 15-16.
[20]   *Id.* ¶ 16.
[21]   *Id.* ¶ 17.
[22]   *Id.* ¶ 16.
[23]   *Id.* ¶ 19.
[24]   *Id.* ¶¶ 16, 18, 20.
[25]   *Id.* ¶ 21.

Plaintiff also asserts that, as a result of the first tasing, his body became rigid and he fell to the ground, sustaining injuries to his head and back.[26] At this time, plaintiff can allegedly be seen on body camera footage floundering on the ground.[27] Shortly thereafter, and before plaintiff allegedly could react to Murray's commands, Murray tased plaintiff for a second time.[28] Plaintiff contends that the second tasing exacerbated the situation and caused him further injury.[29]

B.   **Procedural Background**

Plaintiff brought this action under 42 U.S.C. § 1983.  In his complaint, plaintiff alleges that the first tasing constitutes an illegal seizure and excessive force in violation of the Fourth Amendment, and false arrest and assault and battery under state law.[30]  According to plaintiff, Murray's first tasing was unreasonable given his knowledge of plaintiff's mental state and the absence of an immediate threat.[31]  Plaintiff further asserts that the second tasing was excessive force in violation of the Fourth Amendment, and assault

---

26   *Id.* ¶ 23.
27   *Id.* ¶ 25.
28   *Id.* ¶¶ 25-26.
29   *Id.* ¶¶ 25, 30.
30   *Id.* ¶ 27.
31   *Id.* ¶ 22.

and battery under state law.[32] Defendants filed an answer on May 20, 2023, in which they raise the defense of qualified immunity as to Murray.[33]

Defendants moved the Court to order plaintiff to submit a Rule 7(a) reply to Murray's assertion of a qualified immunity defense.[34] On August 7, 2023, the Court denied the motion, finding plaintiff's complaint sufficiently detailed to allow the Court to rule on any subsequent dispositive motion on qualified immunity.[35] Defendants now move to stay all discovery in the matter pending the Court's resolution of the qualified immunity issue.[36] Although defendants initially requested that discovery be stayed or, alternatively, that discovery be limited to the issue of qualified immunity, defendants now contend in their reply brief that only a stay would be appropriate under recent Fifth Circuit precedent.[37] Defendants further contend that they are in possession of body camera video footage "depict[ing] actions worthy of qualified immunity."[38] Defendants acknowledge that presenting such extraneous evidence would be

---

[32]     *Id.* ¶ 28.
[33]     R. Doc. 6.
[34]     R. Doc. 8.
[35]     R. Doc. 14.
[36]     R. Docs. 16 & 20.
[37]     R. Doc. 20.
[38]     R. Doc. 16-1 at 2.

6

inappropriate at the motion-to-dismiss stage.[39] Therefore, defendants want to present this evidence in a summary judgment motion and seek a stay of discovery pending resolution of the issue of qualified immunity.[40] In opposition, plaintiff asserts that defendants' motion to stay discovery is premature because there is no pending dispositive motion on the issue of qualified immunity.[41]

The Court considers the parties' arguments below.

## II. DISCUSSION

It is well established that qualified immunity shields public officials from suit and liability under § 1983, "so long as their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)); *Crane v. City of Arlington*, 50 F.4th 453, 463 (5th Cir. 2022). Qualified immunity is not only a defense to liability, but also "a limited entitlement not to stand trial or face the other burdens of litigation," including "the burdens of discovery." *Ashcroft v. Iqbal*, 556 U.S. 662, 672 (2009) (citation and internal

---

[39] *Id.* at 3.
[40] *Id.* at 5; R. Doc. 20 at 3.
[41] R. Doc. 17.

7

quotation marks omitted); *see also Carswell v. Camp*, 54 F.4th 307, 311 (5th Cir. 2022) ("One of the most important benefits of the qualified immunity defense is 'protection from pretrial discovery, which is costly, time-consuming, and intrusive.'" (quoting *Backe v. LeBlanc*, 691 F.3d 645, 648 (5th Cir. 2012))). Courts must therefore endeavor to resolve immunity questions "at the earliest possible stage in litigation." *Ramirez v. Guadarrama*, 3 F.4th 129, 133 (5th Cir. 2021) (per curiam) (first citing *Mitchell v. Forsyth*, 472 U.S. 511, 526-27 (1985); and then citing *Pearson*, 555 U.S. at 231).

Murray first asserted the defense of qualified immunity in his answer to plaintiff's complaint.[42] He now alleges that he intends to file a motion for summary judgment on his entitlement to the immunity defense.[43] Defendants also contend that, pursuant to *Carswell v. Camp*, 54 F.4th 307 (5th Cir. 2022), a complete stay of discovery is required pending this Court's resolution of the presently unfiled motion for summary judgment.[44] In this context, the Court does not read *Carswell* so broadly.

The Fifth Circuit in *Carswell* clarified that all discovery involving a defendant who has raised the defense must be stayed until resolution of the

---

[42]  R. Doc. 6.
[43]  R. Doc. 16-1 at 3, 5.
[44]  R. Doc. 20.

qualified immunity question in a motion to dismiss. *Id.* at 311-12 (recognizing that Supreme Court precedent "has now made clear that a plaintiff asserting constitutional claims against an officer claiming [qualified immunity] must survive the motion to dismiss without *any* discovery." (emphasis in original)). But *Carswell* does not mean that there can never be discovery until the qualified immunity issue is resolved. Rather, it held that a plaintiff "must survive the *motion to dismiss* without any discovery." *Id.* at 311; *see also id.* at 312 (limiting application of its holding to the motion-to-dismiss stage and recognizing that the holding does not mean "that the QI determination must be made once-and-for-all at the motion-to-dismiss stage"). Indeed, *Carswell* itself recognizes that if a court denies a defendant's motion to dismiss on qualified immunity, the defendant may then, "à la *Lion Boulos* and its progeny[,] . . . move the district court for discovery limited to the factual disputes relevant to whether [qualified immunity] applies, then reassert [the immunity defense] in a summary judgment motion." *Id.* at 312 (citing *Hutcheson v. Dallas Cnty.*, 994 F.3d 477, 481 (5th Cir. 2021)); *see also Lion Boulos v. Wilson*, 834 F.2d 504, 507-08 (5th Cir. 1987) (first articulating this limited-discovery exception). Such discovery must be "narrowly tailored" to the issue of qualified immunity and necessary "to uncover only those facts needed to rule on the immunity claim." *Carswell*,

54 F.4th at 311 (quoting *Wicks v. Miss. State Emp't Servs., Inc.*, 41 F.3d 991, 994 (5th Cir. 1995) (internal quotation marks omitted)); *see also Zapata v. Melson*, 750 F.3d 481, 485 (5th Cir. 2014) (holding that, in ordering narrowly tailored discovery, a district court must "identify any questions of fact it needed to resolve before it would be able to determine whether the defendants were entitled to qualified immunity").

Here, defendants have foregone filing a motion to dismiss on qualified immunity. Instead, defendants intend to file a motion for summary judgment on the immunity issue so that they can rely on Murray's body camera footage.[45] This essentially places defendants in a similar position to a defendant described in *Carswell* who reasserts the immunity defense at summary judgment after he has lost a motion to dismiss. *See Carswell*, 54 F.4th at 312; *see also Bourne v. Gunnels*, 921 F.3d 484, 490 (5th Cir. 2019) (holding that on review of a motion for summary judgment based on qualified immunity, "[a]ll inferences are drawn in the plaintiff's favor" unless "blatantly contradicted and utterly discredited by video recordings" (citations and internal quotation marks omitted)). In this situation, the Fifth Circuit clearly contemplates the use of narrowly tailored discovery before ruling on the motion for summary judgment, if such discovery is necessary

---

45     *Id.* at 5.

10

to resolve any questions of fact relating to qualified immunity. *See Carswell*, 54 F.4th at 311-12. Defendants are thus not entitled to a complete stay of discovery at the summary-judgment stage, if the Court finds limited discovery necessary to its determination of Murray's entitlement to qualified immunity.

Nevertheless, without a summary judgment motion on the issue of qualified immunity before the Court, the Court cannot determine what fact issues, if any, must be resolved before deciding the immunity question. The Court will therefore determine whether plaintiff is entitled to limited discovery after it receives defendants' motion for summary judgment. Murray is ordered to file a motion for summary judgment on the issue of qualified immunity by December 6, 2023. All discovery in this matter is stayed pending a ruling on the motion for summary judgment or an order of the Court permitting limited discovery.[46] *See id.* at 311; *Wicks*, 41 F.3d at

---

[46] While "[t]he protection of government officials who are entitled to immunity does not *ipso facto* disable a plaintiff from conducting discovery against all non-immune defendants in his case," *Martin v. Dallas Cnty.*, 822 F.2d 553, 555-56 (5th Cir. 1987), the Court nevertheless finds good cause to impose the stay as to all defendants. This is because allowing discovery to proceed solely on plaintiff's claims against Champagne would potentially require Murray, and their counsel, "to participate in the [discovery] process to ensure the case does not develop in a misleading or slanted way that causes prejudice to their position," thereby inappropriately subjecting them to the burdens of discovery. *Iqbal*, 556 U.S. at 685; *see also Alexander v.*

11

994-95; *Hutcheson*, 994 F.3d at 481; *Backe*, 691 F.3d at 648; *Lion Boulos*, 834 F.2d at 507; *Webb v. Livingston*, 618 F. App'x 201, 206 (5th Cir. 2015) (per curiam).

After Murray files his motion for summary judgment, and upon proper motion by the plaintiff, the Court may authorize the parties to conduct discovery that is narrowly tailored to facts that must be resolved before the Court rules on the qualified-immunity defense. *See Carswell*, 54 F.4th at 311-12; *Hutcheson*, 994 F.3d at 481; *see also Backe*, 691 F.3d at 648 (allowing narrowly tailored discovery "if further factual development is necessary to ascertain the availability of that defense"). Plaintiff must file any motion for limited discovery no later than fourteen days from service of Murray's motion for summary judgment. Any motion for leave must identify: (1) the

---

*Hall*, No. 20-21, 2022 WL 879496, at *2 (N.D. Miss. Mar. 23, 2022) ("[T]his Court has previously found it proper to stay all discovery . . . , even when an immunity motion is asserted on behalf of fewer than all defendants in a multi-defendant case."); *but see Davis v. City of Fort Worth*, No. 14-491, 2014 WL 12940677, at *1 (N.D. Tex. July 31, 2014) (holding that *Iqbal* did not place "a categorical ban on discovery as to all defendants when less than all of them assert the defense of qualified immunity"). Moreover, the Court does not find that the imposition of a stay of all discovery against all defendants would unduly prejudice plaintiff or delay the proceedings given the limited duration of the stay imposed herein. *Cf. Clinton v. Jones*, 520 U.S. 681, 707-08 (1997) (expressing concerns that "delaying trial would increase the danger of prejudice resulting from the loss of evidence, including the inability of witnesses to recall specific facts").

specific discovery plaintiff seeks, including a list of specific documents or specific categories of documents that plaintiff wants to obtain;[47] and (2) an explanation of why this discovery is necessary to enable plaintiff to respond to the specific qualified-immunity issues raised in Murray's motion for summary judgment. Plaintiff must narrowly tailor the requested discovery to those facts necessary for the Court to rule on qualified immunity. The Court will permit discovery only if Murray's immunity defense turns at least partially on a factual question, *and* the Court is unable to rule on the immunity defense without further clarification of the facts. Defendants have seven days to respond to plaintiff's motion for leave.

    If limited discovery is granted, the Court will issue an order identifying the discovery permitted and the deadlines for completing it. The Court will also set the deadline for plaintiff's response to the motion for summary judgment. If discovery is denied, plaintiff will have twenty-one days to respond to the motion for summary judgment, and defendants will have seven days to reply.

---

[47]    Should plaintiff wish to send interrogatories to Murray, plaintiff must include in his motion for leave a list of the specific interrogatories.

## III. CONCLUSION

For the foregoing reasons, the Court GRANTS IN PART and DENIES IN PART defendants' motion. The Court ORDERS defendant Murray to file a motion for summary judgment with supporting evidence on the issue of qualified immunity no later than **December 6, 2023**. The Court GRANTS defendants' request to stay all discovery in the matter pending a ruling on the anticipated motion for summary judgment or an order permitting limited discovery. The Court DENIES defendants' request to stay discovery insofar as they seek to foreclose the Court's authority to permit narrowly tailored discovery pursuant to *Lion Boulos* and its progeny. Further, the Court ORDERS plaintiff to file any motion for leave to conduct limited discovery no later than **fourteen (14) days** from service of Murray's motion for summary judgment. Defendants have **seven (7) days** to respond to any such motion.

New Orleans, Louisiana, this __27th__ day of October, 2023.

_____
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE